# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| ROBERT LEE SHOCKLEY, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 5:15-CV-452 (MTT) |
| MACON BIBB COUNTY, GEORGIA, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

Defendants Macon-Bibb County, Georgia and Sheriff David Davis have moved for summary judgment. Docs. 28; 29. For the following reasons, the motions are **GRANTED**.

## I. BACKGROUND

Plaintiff Robert Shockley, an African-American, was an investigator for the Bibb County Sherriff's Office. Doc. 32-1 at 1-2. Previously, Shockley worked for the Macon Police Department but became an employee of the Sheriff's Office when the Macon and Bibb County governments merged on January 1, 2014. *Id.* At that time, one of Shockley's superiors was Captain Jimmy Barbee, a Caucasian. Docs. 20 at 7; 29-5 at 2. According to Shockley, beginning in March 2014, Barbee began accusing him of not doing his job and then began a "campaign" of harassment towards Shockley. Docs. 32-1 at 3; 32-14 at 2. On August 28, 2014, Shockley complained to Bibb County's EEO Compliance Officer, Doron Dvorak, that he was being harassed due to his race. Doc. 32-1 at 6; 32-17 at 7. Shockley ultimately filed a complaint with the EEOC on

September 17, 2014 regarding the alleged harassment. Docs. 1 at 3; 18 at 3-4. The Sheriff's Office investigated Shockley's complaint; as a part of that investigation, Lieutenant Gary Minter interviewed Shockley on December 3, 2014. Doc. 32-20. In that interview, when asked if he could amicably work with Barbee, Shockley stated he had "let [things] slide" before but was "not going to take that no more." *Id.* at 36. Less than 24 hours after learning of Shockley's comments, fearing an escalation of tension between the two, Chief Deputy Russell Nelson, Major Brady Fields, and Colonel Henderson Carswell decided to move Shockley to a separate office building, about a block away from his previous office, during the investigation into Shockley's complaints. Docs. 29-2 ¶¶ 18-19; 29-4 ¶ 11-12. Later, in January 2015, a position became available in another unit. Docs. 29-2 ¶ 22; 29-5 ¶ 17; *see also* 29-4 ¶ 17. Captain Barbee took that position "within two or three weeks," and Shockley was "promptly moved back" to his previous office space. *Id.*

Shockley filed this lawsuit on December 7, 2015 alleging claims against Barbee, Carswell, Fields, Macon-Bibb County, Georgia, the Macon-Bibb Sheriff's Office, and Russell Nelson. Doc. 1. Barbee, Carswell, Fields, Nelson, and the Macon-Bibb Sheriff's Office then moved to dismiss for failure to state a claim. Doc. 6. Shockley then filed an Amended Complaint (Doc. 18) against only Defendants Macon-Bibb County, Georgia and Sheriff David Davis. In his Amended Complaint, Shockley asserted hostile work environment and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Doc. 18 at 2-3. The Defendants then moved for judgment on the pleadings as to Shockley's hostile work environment claim (Doc. 28) and summary judgment on his retaliation claim (Doc. 29). The Defendants

have since moved to convert their motion for judgment on the pleadings as to the hostile work environment claim into a motion for summary judgment (Doc. 36 at 2-3); the Court granted this motion (Doc. 43) and, in turn, gave Shockley an opportunity to respond, which he did (Doc. 44).[1]  Thus, the Court now addresses the Defendants' motions for summary judgment regarding both of Shockley's claims.

## II. SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The moving party bears the burden of proving no genuine issue of material fact exists." *Info. Sys. & Networks Corp.*, 281 F.3d at 1224.  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

---

[1] Shockley is representing himself.  However, his pleadings reflect a remarkable degree of sophistication for a pro se litigant.  Nevertheless, the Court has construed his pleadings liberally, as required, and provided him with notice of his obligations when responding to dispositive motions. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998); *see also* Doc. 31.  Based on his pro se status, the Court had concern with the Defendants' strategy of boxing Shockley into clearly deficient pleadings regarding his hostile work environment claim.  And, as it turns out, the Defendants shared the Court's concern as they moved to convert that motion into a motion for summary judgment after Shockley filed numerous documents in response to the motion for judgment on the pleadings.  Accordingly, the Court converted the motion into a motion for summary judgment and gave Shockley fourteen days to respond. Doc. 43.

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Rule 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. <u>HOSTILE WORK ENVIRONMENT CLAIM</u>

Shockley's hostile work environment claim is based on Barbee's treatment of him over a six-month period, which Shockley alleges caused him embarrassment, to become "silent and withdrawn from his co-workers," and to fear future reprisals from Barbee. Doc. 32-1 ¶ 4. Shockley contends that Barbee carried out a campaign of harassment, which included: (1) accusing him of not doing his job; (2) calling him a "goddamn liar" in front of other members of the unit; (3) calling him a "little bitch to his supervisors;" (4) taunting him about not getting a new vehicle and ultimately assigning one to a Caucasian officer; (5) reassigning one of his cases to a Caucasian officer; (6) preventing him from entering a crime scene; (7) preventing him from retrieving video surveillance for one of his cases; (8) publicly threatening to re-assign Shockley's cases;

(9) "repeatedly yelling profanities at [him]"; (10) "hitting [him] in the testicles with a bag of Tupperware bowls"; (11) demanding that he wash his car; (12) "calling [him] at home and yelling at him"; and (13) shoving him during a meeting and taking his seat. Doc. 32-1 ¶ 3.

"To establish a hostile work environment claim, [a plaintiff] must show: '(1) that [he] belongs to a protected group; (2) that [he] has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.'" *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)). Here, Shockley's claim fails because there is no genuine dispute of fact as to (1) whether the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (2) whether the harassment he suffered was because of his race.

To prove a plaintiff suffered harassment sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, the employee must prove that he "subjectively perceive[d] the harassment as sufficiently severe and pervasive" and "this subjective perception must be objectively reasonable." *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 806 (11th Cir. 2012) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)). Courts look

at the totality of the circumstances to determine the objective severity of harassment, including: "'(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.'" *Alhallaq v. Radha Soami Trading, LLC*, 484 F. App'x 293, 295 (11th Cir. 2012) (quoting *Miller*, 277 F.3d at 1275); *see also Mendoza*, 195 F.3d at 1246. However, "Title VII is not a 'general civility code,' and simple teasing . . . offhand comments, and isolated incidents (unless extremely serious) do not constitute a hostile work environment." *Guthrie*, 460 F. App'x at 806 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)); *see also Davis v. Town of Lake Park*, 245 F.3d 1232, 1242 (11th Cir. 2001). Moreover, "[w]orkplace conduct is viewed cumulatively and in its social context." *Guthrie*, 460 F. App'x at 806 (citing *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010)).

Here, it is undisputed that Shockley subjectively perceived the harassment to be sufficiently severe and pervasive. But considering the totality of the circumstances and the relevant factors, there is no material issue as to whether Shockley's subjective belief was objectively reasonable. Shockley and Barbee worked close to one another so their contemptuous relationship certainly affected Shockley regularly. But the evidence does not show that he suffered extreme harassment on a daily basis. *Cf. Miller*, 277 F.3d at 1276 (stating a jury could find plaintiff established hostile work environment claim where his supervisor "hurled" ethnic slurs at him "three to four times a day"). Shockley also states that the harassment was physical on two occasions—when Barbee shoved him during a meeting and allegedly hit him in the testicles with a bag of tupperware—and

that he feared a physical altercation with Barbee, especially because Barbee bragged about how many men he had shot. Docs. 32-1 ¶ 3, 4; 32-3 at 6; 32-14 at 4. But these physical altercations, in context, are relatively mild and the evidence shows no objective basis for Shockley to be personally threatened by Barbee. Shockley also claims that Barbee briefly prevented him from entering a crime scene on one occasion, obstructed his ability to procure video surveillance evidence on another, and that he re-assigned a case from Shockley to a Caucasian officer. Docs. 32-1 ¶ 3; 32-14 at 3-5. However, the evidence does not show that the harassment unreasonably interfered with Shockley's ability to perform his job.

Ultimately, based on the evidence, the harassment was simply not severe enough to establish that Shockley's "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller*, 277 F.2d at 1275 (internal quotation marks and citations omitted). There was certainly personal animosity between the two, and Barbee undoubtedly treated Shockley poorly, which Shockley was understandably unhappy about. But, again, conduct in the workplace is viewed "cumulatively and in its social context." *Guthrie*, 460 F. App'x at 806. And "Title VII is not a general civility code for the workplace, and its protections 'do not extend to everything that makes an employee unhappy.'" *Hudson v. Middle Flint Behavioral Healthcare*, 2013 WL 256740 at *8 (M.D. Ga.) (quoting *Davis*, 245 F.3d at 1242); *see also Guthrie*, 460 F. App'x at 806 ("'[S]imple teasing . . . offhand comments, and isolated incidents (unless extremely serious)' do not constitute a hostile work environment." (quoting *Faragher*, 524 U.S. at 788)); *Alhallaq*, 484 F. App'x at 296

(stating that "offensive conduct," even if "rude and insensitive, is not actionable under Title VII," which does not regulate "offensive utterances and general vulgarity"). And "'[p]ersonal animosity is not the equivalent' of the type of harassment prohibited by Title VII, and the plaintiff cannot turn a 'personal feud' into such a Title VII claim. *Alhallaq*, 484 F. App'x at 295-96 (alteration in original) (quoting *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir.1986)).

Moreover, there is no material issue as to whether Shockley was harassed *because of his race.* To prove a Title VII hostile work environment claim, an employee must prove that the harassment suffered was "based on a protected characteristic of the employee," such as race. *McCann*, 526 F.3d at 1378 (quoting *Miller*, 277 F.3d at 1275); *see, e.g., Alhallaq*, 484 F. App'x at 296 (finding an employee failed to prove alleged harassment was based on her religion). Certainly, Barbee treated Shockley worse than other members of the unit, perhaps save one who is discussed below.[2] Doc. 32-12 at 4-6. But Shockley has provided no evidence, other than his own belief and that of one other officer, Shelly Rutherford, to establish Barbee's treatment of him was based on his race.[3] Docs. 39 at 184:6-13 ("[Question]: Is there anything objective that you can point to that would indicate [race] was the basis for [the harassment] other than your . . . perception and opinion[?] [Shockley:] No."), 276:14-278:11 ("Shockley: My perception . . . I feel it's that way."); 41 at 28:18-19 ("Rutherford: I find—me, personally, that's just

---

[2] While Shockley and one other member of the unit faced the brunt of Barbee's allegedly boorish behavior, it is clear from the interviews with other members of the unit that, because of his behavior, none of his subordinates liked Barbee.

[3] Of the thirteen officers interviewed as a part of the Sheriff's Office's investigation, only Rutherford stated she believed that Barbee harassed Shockley based on his race. *See* Docs. 32-2; 32-3; 32-4; 32-5; 32-6; 32-7; 32-8; 32-9; 32-10; 32-11; 32-12. And even Rutherford's belief was undermined when she later stated: "I don't know. I honestly—I don't know if it was personal, you know, because I don't know what started it." Doc. 41 at 33:2-7. Deputy Carlos Mosley perceived Barbee asking Shockley to wash his car to be racist, but otherwise did not identify any racial harassment by Barbee. Doc. 32-7 at 8.

my opinion. I find that to be a racist act."). It is undisputed that there were no overt or express racist acts or comments, such as Barbee calling Shockley racial epithets or using offensive language towards Shockley.[4] *Cf. McCann*, 526 F.3d at 1378-79 (the defendant referred to another African-American employee as a "n---er bitch); *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (the defendant called the plaintiff "boy"); *Miller*, 277 F.3d at 1273-74 (the defendant called the plaintiff ethnic slurs including "Wetback," "Spic," and "Mexican Mother F-----"). And Shockley was not the only African-American in his unit; at the time of the harassment, there were at least ten other African-Americans in his unit, a majority of the seventeen person unit, including all three lieutenants. Doc. 39 at 61:17-25, 62:22, 106:4-21. And yet Shockley concedes that Barbee did not treat any other African-American in a similar manner. *See* Doc. 39 at 286:4-10; *see also* Doc. 41 at 30:6-13. In fact, Shockley states that the only other individual to be treated in a similar manner was Carlos Stokes, a Caucasian. Doc. 39 at 155:7-24. Indeed, in the end, even Shockley agreed in his deposition that the harassment from Barbee was a result of a "convergence of circumstances," including his job performance, that had nothing to do with his race. Doc. 40 at 78:11-21.

Accordingly, the Defendants are entitled to judgment as a matter of law regarding Shockley's hostile work environment claim.

## IV. **TITLE VII RETALIATION**

Shockley claims that the decision to temporarily relocate him to an office in another building was in retaliation to his EEOC complaint. Doc. 18 at 3. An employer

---

[4] Another employee did inquire as to whether Shockley was Barbee's "do boy" after witnessing Shockley washing Barbee's car. Doc. 32-7 at 7. But there is no evidence that Barbee or any other employee used a racial epithet towards him at any other time. Shockley did state that Barbee said "n---er" at times but only when describing what someone else, such as a witness in a case, had stated. Doc. 39 at 188:2-14.

may not discriminate or retaliate against an employee who "has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3. In the absence of direct evidence, retaliation claims under Title VII are analyzed under the *McDonnell Douglas* burden shifting framework.

To establish a prima face case of retaliation, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1233 (11th Cir. 2006). If the plaintiff makes out a prima facie case, the burden shifts to the employer to articulate legitimate, nondiscriminatory reasons for the adverse employment action, and, if the employer does so, the plaintiff has the ultimate burden of showing by a preponderance of the evidence that the employer's reasons are pretext for retaliation. *Holifield v. Reno*, 115 F.3d 1555, 1564-66 (11th Cir. 1997). The Defendants argue that Shockley has failed to establish a prima facie case for Title VII retaliation and, alternatively, that the Defendants present a legitimate, nondiscriminatory reason for the adverse employment action. *See generally* Doc. 29-1.

### A. Statutorily Protected Speech

An employee's speech regarding unfair employment practices is statutorily protected speech if the employment practice is made unlawful by Title VII. *See Gerard v. Board of Regents of State of Ga.*, 324 F. App'x. 818, 825 (11th Cir. 2009) ("Statutorily protected expression includes internal complaints of discrimination to superiors, as well as complaints lodged with the EEOC and discrimination-based lawsuits."); *see also*

*Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1350-51 (11th Cir. 1999). Thus, a plaintiff's complaint of "unfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful practice under Title VII" and is not protected speech for purposes of Title VII retaliation claims. *See Coutu v. Martin County Bd. of County Commissioners*, 47 F.3d 1068, 1074 (11th Cir. 1995). To establish that his EEOC complaint is statutorily protected speech, Shockley "need not prove the merits of [his] underlying complaint." *Tatt v. Atlanta Gas Light Co.*, 138 F. App'x. 145, 147 (11th Cir. 2005). "But [he] must demonstrate 'a good-faith, reasonable belief that [his employer] was engaged in unlawful employment practices.'" *Id.* (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). Put differently, "[he] must prove both (1) a subjective, good-faith belief that [the Defendants] engaged in an unlawful employment practice and (2) that [his] belief was objectively reasonable." *Id.* The objective reasonableness of such a belief is judged "against existing substantive law." *Id.* (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999)). The alleged conduct that Shockley complains of does not have to be actual harassment, but "the conduct 'must be close enough to support an objectively reasonable belief that it is.'" *Id.* (quoting Clover, 176 F.3d at 1351).

Generally, this element of a retaliation claim is easily established. It is usually apparent from the face of an EEOC complaint that there is an objectively reasonable basis for a plaintiff's subjective belief that an employer acted unlawfully. But that is not the case here. Shockley's EEOC complaint alleges, in great detail, multiple incidents of harassment but fails to connect any of these incidents to his race. *See generally* Doc. 32-17. While he subjectively believed that the harassment was due to his race (the

heading of his charge claims "harassment based on race" (*id.* at 2)), his lengthy account of the harassment never suggests, much less alleges, that the harassment was based on his race or even that it was "close enough to support an objectively reasonable belief that it was." *Tatt*, 138 F. App'x at 147 (internal quotation marks omitted). Therefore, viewing the evidence in the light most favorable to him, and based on the undisputed facts, he did not engage in statutorily protected speech and, thus, fails to establish a prima facie case of retaliation.

As Shockley fails to establish the first element of a prima facie case for retaliation, the Court need not address the other two elements: adverse employment action and causal effect.[5]

---

[5] Despite the Defendants' argument to the contrary, Shockley does establish a causal connection between his EEOC complaint and his temporary relocation. All that is required to establish a causal link is to show that "the protected activity and the adverse action were not wholly unrelated." *Clover v. Total System Services, Inc.*, 176 F.3d at 1354 (internal quotation marks and citation omitted). A plaintiff can satisfy this element if she "provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir.1999) (finding a causal link where the employee filed an EEOC complaint on May 19 and was fired on July 10 of the same year). Here, it is undisputed that the Defendants became aware of Shockley's complaint in early November and he was temporarily relocated in early December. Doc. 29-4 ¶ 9; 15. This timeframe is "sufficiently proximate to create a causal nexus." *Id.* Also, the Court notes there may be a fact issue as to whether Shockley suffered an adverse employment action. Under *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), an adverse employment action is defined as one that is materially adverse to the employee, meaning it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 67-68. Considering all the relevant factors, including that his temporary office relocation had a minimal effect on Shockley's ability to perform his job, he could still return to the other office for meetings, and that he was moved for only a few months, Defendants' actions are likely not of the type that would dissuade a worker from making a charge of discrimination. Docs. 29-2 ¶¶ 18-19, 20-21, 22; 29-3 ¶ 17; 29-4 ¶¶ 11-12, 17; 29-5 ¶ 17; 39 at 556:12-567:12. However, Shockley does allege several grievances with his new office including that it lacked internet access and that, due to the privacy of his office, he felt unsafe interviewing suspects there. Docs. 32-1 at 8, 16; 39 at 556:12-567:1. Regardless, the Court need not determine whether Shockley suffered an adverse employment action because, as stated, Shockley fails to establish the first element of a prima facie case for retaliation: protected speech. So, even if Shockley did suffer an adverse employment action, causally related to the filing of his EEOC complaint, it was not in retaliation to protected conduct and thus does not support an actionable retaliation claim.

## B. Legitimate Nondiscriminatory Reason for Adverse Employment Action

Even if Shockley had established a prima facie case for retaliation, the Defendants have provided a legitimate nondiscriminatory reason for his temporary relocation: Shockley was moved because of comments he made to Lieutenant Minter during an interview that suggested, in the minds of his superiors, that there was a potential for violence between Barbee and Shockley. Docs. 29-2 ¶ 18-19; 29-4 ¶ 11-12. Specifically, they were concerned regarding Shockley's statement that "I've already let him slide twice putting his hands on me. . . . So I ain't, I'm not going to take that no more." Docs. 29-2 at 18; 29-4 at 11; 32-20 at 36. The Defendants assert that because of these comments, and to prevent potential violence, it was decided to move Shockley to a different office building where he would have less interaction with Barbee. Doc. 29-1 at 16.

Shockley attempts to refute this reason as pretext for retaliation by pointing out that the Defendants delayed in investigating his claim, that he did not threaten Barbee, that he stated he did not want to be moved in the interview, and that he was still allowed to attend meetings with Barbee, which, according to Shockley, undercuts the Defendants' assertion that he was moved to prevent violence between the two. Doc. 32-1 at 19-20. But these arguments do not rebut the Defendants proffered reason as pretext for retaliation. First, Shockley's delay argument misses the point. Regardless of when they interviewed him regarding his complaint, the fact is that, once they interviewed him, Shockley's comments led them to be concerned and they acted almost immediately—Shockley was moved less than 24 hours after the interview. *See* Docs. 29-2 ¶¶ 18-19; 29-4 ¶ 11-12. And while Shockley may not have perceived his

comments to be threatening and did not want to move, that does not rebut that the Defendants feared there could be an altercation.  Indeed, the Defendants do not claim Shockley threatened Barbee but that his comments led them to fear an altercation.  *See* Docs. 29-1 at 16; 29-2 ¶ 18-19; 29-4 ¶ 11-12.  Finally, the Defendants stated they sought to limit the interaction between Shockley and Barbee until the conclusion of the investigation, not to end it altogether.  *See id.*  Therefore, that he and Barbee still attended meetings together does not refute the Defendants' stated reasons for the move.  Accordingly, Shockley has failed to rebut the Defendants legitimate nondiscriminatory reason as pretext for retaliation.

## V. CONCLUSION

The Defendants' Motions for Summary Judgment (Docs. 28; 29) is **GRANTED**. Accordingly, the Plaintiff's claims are **DISMISSED**.

**SO ORDERED**, this the 21st day of August, 2017.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
